***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Ledford and the briefs and oral arguments before the Full Commission. The appealing party has not shown good cause to reconsider the evidence, receive further evidence, or rehear the parties and their representatives. Accordingly, the Full Commission AFFIRMS the Opinion and Award of Deputy Commissioner Ledford and enters the following Opinion and Award.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. All parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction of *Page 2 
the parties and subject matter.
2. On October 14, 2005, an Employee/Employer relationship existed between the Plaintiff and the Defendant-Employer.
3. Plaintiff's average weekly wage may be determined from a Form 22 Wage Chart to be provided by Defendants with supporting wage information.
4. Stipulated Exhibits 1, 2, 3 and 4 have been entered into the record.
5. Additional medical records were provided to Deputy Commissioner Ledford post-hearing by Patricia Austin and the Department of Veterans Affairs. All of these medical records were entered into the evidentiary record.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing, Plaintiff was a fifty (50) year-old woman living in Wilmington, North Carolina. Her date of birth is June 9, 1957. Plaintiff graduated from high school and attended three years of college at the University of Kentucky. Plaintiff served 14 years in the Army as an administrative specialist and imagery analyst.
2. Plaintiff began working for the Defendant-Employer in February 2005, as a housekeeper. The Defendant-Employer provided contract cleaning services to various companies, including Sears.
3. Plaintiff testified that on October 14, 2005, she had just begun her 6:00 a.m. shift at Sears. She was wringing out a mop, when her left hand slid off the wringer lever, causing her to pitch forward and grab the bucket with her left hand to avoid a fall. After resting a moment, *Page 3 
Plaintiff testified she stood up and felt pain in the left side of her chest. Plaintiff continued to work and finished her shift after the alleged injury. Plaintiff did not seek medical attention that day or fill out an incident report.
4. Mr. Louis Herring, Plaintiff's supervisor, contacted Plaintiff on October 15, 2005, to inquire as to why she had not reported to work that day. Plaintiff informed Mr. Herring she felt a sharp pain in her chest while mopping the day before and was planning to see a doctor. Plaintiff did not report any specific accident to Mr. Herring, and did not mention her hand slipping on the mop handle.
5. Prior to the alleged October 14, 2005, incident, Plaintiff had complained to Mr. Herring on numerous occasions about pain in her shoulder and hip, as well as other health problems. Plaintiff was often out of work for medical appointments, even prior to the alleged accident of October 14, 2005.
6. Mr. Herring informed Plaintiff she would need to fill out an accident report if she had sustained an injury at work on October 14, 2005. He also told her the matter would have to go through Mr. Earley McNatt, the district manager. Plaintiff did not complete a report at that time. A week after the alleged accident, Mr. Herring saw Mr. McNatt and mentioned it to him.
7. Plaintiff presented to the VA on October 18, 2005, and October 19, 2005, for treatment. She was seen on October 18, 2005, for a urology consult, with complaints of incontinence and urgency at night. During her October 19, 2005, appointment, Plaintiff complained of sleep disturbance, and it was noted she had existing "moderate impairment." Plaintiff did not mention during either VA visit that she was experiencing left shoulder or chest pain, or that she had sustained any type of work injury.
8. Plaintiff returned to the VA on October 24, 2005, complaining she had been *Page 4 
experiencing left chest pain for three weeks. The undersigned finds this is inconsistent with Plaintiff's alleged date of injury just ten days prior. Again, Plaintiff failed to mention any injury giving rise to such chest pain, and did not complain of left shoulder pain. Plaintiff was transferred to the emergency department based on her complaints of chest wall pain.
9. Plaintiff had a history of gastro esophageal reflux disease dating back to at least July 2004. During her October 24, 2005, VA visit, it was noted that when Plaintiff lay down for an EKG, she started having substernal pain that appeared to be indigestion. Plaintiff was diagnosed with chest wall pain and released from the VA emergency department with pain medication.
10. Plaintiff continued to work for the Defendant-Employer in her normal capacity until October 24, 2005, when she transferred her employment to Wyatt Leasing, a cleaning service that assumed the Sears contract. Plaintiff continued to work for Wyatt Leasing as a housekeeper until she was taken out of work for hip problems on November 23, 2005.
11. An EMS Patient Care Report reflects Plaintiff was attended to on November 3, 2005, when she complained of chest tightness and pain. Plaintiff informed EMS responders that she had been treated for the same problem a week prior at the VA. Plaintiff was transported to New Hanover Regional Medical Center (NHRMC) Emergency Department. Medical records from her visit do not mention any specific accident giving rise to her chest pain, nor are there any complaints of shoulder pain noted. Plaintiff was diagnosed with chest wall pain and released.
12. On or about December 5, 2005, Plaintiff contacted district manager, Earley McNatt, to request the telephone number for Human Resources. Plaintiff informed Mr. McNatt that she had hurt her shoulder, but she failed to provide any details regarding the circumstances surrounding her alleged injury. *Page 5 
13. On or about December 6, 2005, Plaintiff completed an Accident Report, wherein she alleged experiencing upper left shoulder/chest pain while mopping. In a Form 18, also completed on December 6, 2005, Plaintiff alleged "left shoulder/chest — pain/swelling mopping floor 3.5 hours at Sears, Westfield Independence Mall, Wilmington, N.C. 28403," with an injury date of October 14, 2005.
14. Plaintiff's Accident Report and Form 18, completed almost two months after the alleged October 14, 2005, incident, are inconsistent with her testimony at hearing that her injuries occurred immediately after beginning her work shift, and arose when her hand slid off a mop wringer lever and she caught herself with her left hand.
15. On December 25, 2005, Plaintiff presented to NHRMC Emergency Department, and for the first time complained of left shoulder pain. This visit was also the first time Plaintiff related her chest and shoulder pain to an alleged October 14, 2005, work injury. Chest x-rays revealed surgical clips in the left breast, with no acute abnormality.
16. On February 22, 2006, Plaintiff returned to the VA with complaints of left shoulder pain. The VA medical note indicates Plaintiff had an orthopedic consult. Plaintiff described, for the first time, the version of the incident she described at hearing. Plaintiff informed physicians she injured her chest and left shoulder when her hand slipped off a mop bucket wringer and she had to catch herself with her left hand. The note also states that Plaintiff "has not worked since Nov. due to hip problem."
17. On examination, Plaintiff had a full range of motion of her left shoulder and neck, with no guarding or complaints of tenderness in her shoulder. X-rays of Plaintiff's left shoulder were negative. She was assessed with a shoulder strain and referred to physical therapy. Plaintiff was determined to have met her physical therapy goals as of April 22, 2006, but *Page 6 
continued to seek treatment for her left shoulder at the VA.
18. On August 9, 2006, Plaintiff underwent a MRI of the left shoulder based on continued pain complaints. The MRI revealed a normal rotator cuff with no evidence of a tear, and no other abnormalities. On August 16, 2006, Plaintiff's treating VA physician determined she did not have a surgical problem in relation to her shoulder or chest.
19. In December of 2006, Plaintiff presented to several medical providers seeking an orthopedic referral for her left shoulder. Upon finally obtaining a referral, the evaluating orthopedist found no evidence of a rotator cuff deficiency or other abnormality.
20. Notwithstanding this information, Plaintiff returned to the VA numerous times thereafter seeking another orthopedic referral for her left shoulder and chest pain, which she then related either to the surgical clips in her breast or to an untreated rotator cuff tear. As evidenced in the medical records, a rotator cuff deficiency had already been ruled out by several physicians and a MRI.
21. On April 25, 2008, Plaintiff had left shoulder and chest x-rays based on continued pain complaints. The x-rays were normal. During that visit Plaintiff related that her left shoulder and chest pain began on October 14, 2005, after an injury and fall sustained while in the service to the military. Plaintiff did not mention or relate her pain to any work-related injury.
22. In regards to Plaintiff's chest and/or left shoulder problems, Plaintiff was never taken out of work for such conditions, nor was she issued any work restrictions related to the same. No physician issued any disability rating for either condition.
23. The greater weight of the evidence, including Plaintiff's own testimony, establishes that Plaintiff's understanding of her inability to work is not due to her left shoulder and/or chest pain, but is due to her other physical problems. Plaintiff has ongoing hip problems, *Page 7 
chronic Deep Vein Thrombosis in her right leg, and hyperthyroidism. She has also been assessed with depression, service-related Post-Traumatic Stress Disorder, and Personality Disorder. Plaintiff testified she is aware her treating physicians have examined her left shoulder and chest and have found nothing wrong.
24. Plaintiff provided inconsistent testimony at hearing regarding whether she had left shoulder and/or chest wall problems prior to October 14, 2005. Medical records reveal a history of such problems dating back to at least 2003. Since that time Plaintiff's complaints have remained essentially the same.
25. Plaintiff returned to work as a Saturday housekeeper in July 2006, and also worked for a moving company from July 2006 through September 4, 2006. Plaintiff worked for Youngblood Staffing from September 11, 2006 until December 4, 2006, when she was terminated for medical absences related to her numerous medical conditions.
26. Plaintiff testified she has been unable to obtain other employment. She was not working at the time of the hearing before Deputy Commissioner Ledford.
27. Plaintiff has filed four Workers' Compensation claims since 2004, one is at issue in this case, two have settled, and one is still pending before the Full Commission. Plaintiff has military service injury claims, some of which are still pending, for which she receives $728.00 per month. Plaintiff has also been receiving $1,139.00 in Social Security Disability since October 2007 for a hip condition and other medical problems, not including her left shoulder or chest.
28. Plaintiff participated in prior settlement negotiations of this claim. During those negotiations, the Plaintiff was represented by counsel. The parties reached an agreement for a settlement amount, but shortly before execution Plaintiff refused to sign the agreement, and her *Page 8 
counsel thereafter withdrew from representation.
29. The undersigned has carefully considered the evidence of record, including Plaintiff's testimony at hearing, and finds that Plaintiff's account of the alleged incident on October 14, 2005, is not credible.
30. Assuming for the purpose of argument that Plaintiff's version of the events were accepted as true, the undersigned finds the greater weight of the evidence, particularly the medical evidence of record, fails to support a finding of causation between the alleged mop incident and her shoulder condition.
31. Based upon competent and credible evidence of record, the undersigned finds Plaintiff failed to prove she sustained a compensable injury by accident while working for the Defendant-Employer on October 14, 2005.
32. Based upon the competent medical evidence of record, the undersigned further finds Plaintiff has otherwise failed to prove she is disabled under the N.C. Workers' Compensation Act due to any alleged shoulder injury of October 14, 2005.
33. The greater weight of the evidence also compels a finding that Plaintiff, without reasonable excuse, failed to give the Defendant-Employer proper notice of the alleged October 14, 2005, accident as required under N.C. Gen. Stat. § 97-22. Plaintiff informed Mr. Herring the day after the alleged incident that she had felt chest pain while mopping, but she did not relate details to him that would indicate the Plaintiff had sustained the reported pain through an accident at work. The first formal written notice to the Defendant-Employer was on December 6, 2005, the date Plaintiff finally filled out paperwork.
34. The undersigned finds Plaintiff's failure to give proper notice under N.C. Gen. Stat. § 97-22 prejudiced the Defendants by preventing an opportunity for immediate investigation *Page 9 
of Plaintiff's claim, including an assessment of her medical condition.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. It may accept or reject the testimony of a witness, in whole or part, depending solely upon whether it believes or disbelieves the same.See N.C. Gen. Stat. § 97-84; Smith v. William MuirheadConstr. Co., 27 N.C. App. 286, 291, 218 S.E.2d 717, 720 (1975).
2. The Commission finds Plaintiff's version of the alleged accident is not credible based upon the greater weight of the evidence, including Plaintiff's hearing testimony. Accordingly, Plaintiff has failed to prove she sustained an injury by accident.
3. "For an injury to be compensable under the terms of the Workers' Compensation Act, it must be proximately caused by an accident arising out of and suffered in the course of employment."Click v. Pilot Freight Carriers, 300 N.C. 164, 167,265 S.E.2d 389, 391 (1980) (citing N.C. Gen. Stat. § 97-2(6)). Plaintiff failed to prove she sustained a compensable injury by accident while working for the Defendant-Employer on October 14, 2005. See N.C. Gen. Stat. § 97-2(6).
4. The Commission further finds the medical evidence of record fails to establish a causal connection between the alleged accident of October 14, 2005, and Plaintiff's alleged left shoulder injury, particularly given Plaintiff's prior history of shoulder complaints.Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003). *Page 10 
5. In regards to Plaintiff's contention that she is disabled as a result of the alleged October 14, 2005, incident, the undersigned finds that even if Plaintiff's version of the facts is accepted as true, the evidence of record fails to show she is unable to earn wages or is otherwise disabled as a result of her alleged left shoulder injury. Plaintiff has numerous pre-existing and extensive physical and psychological problems that impact her ability to earn wages in a competitive employment. See
N.C. Gen. Stat. § 97-29. See Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982).
6. "The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment." Hilliard v. Apex CabinetCo., 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). This burden can be met in one of the four following ways: "(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury."Russell v. Lowe's Product Distribution,108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). Plaintiff has failed to meet the burden of disability under Russell, and is therefore entitled to no Workers' Compensation benefits.Id.; See N.C. Gen. Stat. §§ 97-2(9).
7. Written notice of a Workers' Compensation claim must be given within 30 days of the alleged injury by accident. However, a failure to provide notice may be excused by the Industrial Commission where two conditions are met: (1) Plaintiff-employee gives a reasonable *Page 11 
excuse for the failure to give written notice, and (2) Defendant-Employer was not prejudiced by the lack of notice.Jones v. Lowe's Companies, Inc.,103 N.C. App. 73, 75, 404 S.E.2d 165, 166 (1991). The purpose of N.C. Gen. Stat. § 97-22 is to provide prompt diagnosis and treatment in order to decrease the seriousness of the injury, and to allow the employer to immediately investigate the claim.Booker v. Duke Medical Ctr.,297 N.C. 458, 481, 256 S.E.2d 189, 204 (1979). A "reasonable excuse" for failure to give proper notice is based on factual issues that depend entirely upon an employee's credibility. Elliot v.A.O. Smith Corp.,103 N.C. App. 523, 524, 405 S.E.2d 799, 800 (1991).
8. The Commission finds Plaintiff failed to give proper notice of an accident as required under N.C. Gen. Stat. § 97-22. Plaintiff failed to show reasonable excuse for the same and thereby prejudiced the Defendants by preventing an opportunity for immediate investigation of Plaintiff's claim and assessment of her medical condition.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission makes the following:
 AWARD
1. Plaintiff has failed to prove she sustained an injury by accident arising out of and in the course of her employment with Defendant-Employer on October 14, 2005. Accordingly, her claim must be and is hereby DENIED.
2. Each side shall pay their own costs.
This the 17th day of March, 2010
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ PAMELA T. YOUNG CHAIR
 S/___________________ STACI T. MEYER COMMISSIONER *Page 1